IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| LEEANN I. MOKIAO,<br><br>Plaintiff,<br><br>vs.<br><br>HAWAIIAN ELECTRIC LIGHT COMPANY, INC.,<br><br>Defendant. | CIVIL NO. 21-00362 JAO-RT<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff Leeann I. Mokiao ("Plaintiff") brings this Americans with Disabilities Act ("ADA") and Title VII action for discrimination against her former employer, Defendant Hawaiian Electric Light Company, Inc. ("Defendant" or "Hawaiian Light"). *See* ECF No. 1. Defendant seeks summary judgment on both of Plaintiff's claims ("Motion"), arguing that Plaintiff cannot prove a prima facie case of either disability or sex discrimination, as alleged in the Complaint. *See* ECF No. 44. For the reasons stated below, the Court GRANTS Defendant's Motion.

## I.   BACKGROUND

**A.   Facts**

Unless otherwise indicated, the following facts are undisputed.  And notably, there are many instances where the record does not support Plaintiff's assessment of the facts as stated in her opposition and Concise Statements of Facts.

### 1.   *Plaintiff's Employment And Diagnoses*

Plaintiff worked for Defendant from June 4, 2007, through February 28, 2019, first as an accountant, and then from 2010, in the human resources ("HR") department.  *See* ECF No. 54-4 at 1; ECF No. 59-5 ¶¶ 1–2; ECF No. 59-20 at 6.

In 1997, prior to Plaintiff's employment with Defendant, Naomi Takemoto-Chock, Ph.D. ("Dr. Chock"), diagnosed her with post-traumatic stress disorder ("PTSD").  *See* ECF No. 59 ¶ 1;[1] ECF No. 59-5 ¶ 3.  This disorder gave Plaintiff severe headaches and affected her breathing, concentration, thinking, sleep, vision, communication, interactions with others, and her work.  *See* ECF No. 59 ¶ 42; ECF No. 59-5 ¶ 3.

In 2008, while Plaintiff was employed by Defendant, Dr. Chock modified Plaintiff's diagnosis to include adjustment disorder with mixed emotional features of depression and anxiety.  *See* ECF No. 59 ¶ 43; ECF No. 59-5 ¶ 4; ECF No. 54-1

---

[1] Defendant did not respond to any of Plaintiff's rebuttal to Defendant's facts or Plaintiff's facts in opposition.  *See generally* ECF No. 61.

at 22 (Tr. 42:5–16).  This additional diagnosis did not alter Plaintiff's symptoms or limitations.  *See* ECF No. 59 ¶ 43; ECF No. 59-5 ¶ 5.  Dr. Chock treated Plaintiff from 2008–2019 for adjustment disorder, ECF No. 54-1 at 26 (Tr. 52:12–19), during which time Plaintiff continued to experience PTSD responses.  ECF No. 59-3 at 15 (Tr. 61:16 to 62:4).

    2.    ***Defendant's Awareness Of Plaintiff's PTSD***

Carla Chitwood ("Chitwood") worked at Hawaiian Light between 2012 and 2014 as the HR director, and was Plaintiff's direct supervisor during that time.  *See* ECF No. 59-26 at 2; ECF No. 59-5 ¶ 13.  She was informed of Plaintiff's PTSD, how that affected her (difficulty breathing, anxiety, severe headaches, dizzy spells, difficulty walking and sleeping), and that she was under a doctor's care.  *See* ECF No. 59 ¶ 28.  Chitwood had also "recognized [Plaintiff] was struggling with debilitating disorders at work."  ECF No. 59-22 at 2.  During this time period, Chitwood had meetings with her own supervisor, the HR department's administrative manager Rhea Lee-Moku ("Lee-Moku"), at least once a week, and during numerous of those meetings discussed Plaintiff's "mental health issues related to PTSD."  *See id.*; ECF No. 59-25 ¶ 4; ECF No. 59-5 ¶ 8.  Two unnamed "management Construction and Maintenance division Superintendents" also told Chitwood that Plaintiff informed them that "her history of assault and related disorder . . . heightens her sensitivity to aggressive and intimidating conduct."

ECF No. 59-26 at 2.

At some point between 2013 and 2019, Plaintiff told Hawaiian Light President James Ignacio ("President Ignacio"), Hawaiian Light General Manager Kevin Waltjen ("Waltjen"), and Lee-Moku of her PTSD condition. ECF No. 59-5 ¶ 10; ECF No. 59-24. Defendant disputes that Waltjen was aware that Plaintiff claimed to suffer from PTSD. *See* ECF No. 45-3 ¶ 3.

Both Chitwood and Plaintiff report that others were also aware of Plaintiff's PTSD, but there remains some ambiguity regarding that awareness. For example, Chitwood attests that Hawaiian Light Manager Miles Nagata ("Nagata") was "aware" of Plaintiff's "mental health struggles," but does not explain the basis of her personal knowledge or what is meant by "mental health struggles." ECF No. 59-5 ¶ 35; ECF No. 59-25 ¶ 5.

### 3. *Plaintiff's Work Conditions At Hawaiian Light*

By 2013, Plaintiff was the only "HR Business Partner" at Hawaiian Light. ECF No. 59 ¶ 51; ECF No. 59-5 ¶ 15. The reduction in staffing caused Plaintiff to work 55 to 80 hours per week, and the stress of the job became severe. ECF No. 59 ¶ 52; ECF No. 59-5 ¶ 16. At some point, according to Plaintiff, she requested an accommodation of reduced hours due to her PTSD, but no accommodation was provided. ECF No. 59 ¶ 53; ECF No. 59-5 ¶ 18. Dr. Chock characterized Plaintiff's feelings of workload stress as a direct result of her being overworked,

4

and not a symptom of her PTSD.  ECF No. 54-1 at 27 (Tr. 57:8-10).  She also testified under oath that Plaintiff did not need "special treatment to do her job." ECF No. 54-1 at 24 (Tr. 44:11-14).

By March and April 2018, Plaintiff's pre-existing hypertension became increasingly severe.  *See* ECF No. 59 ¶ 54; ECF No. 59-5 ¶ 20.  One of her doctors recommended that she transfer to a "less stressful job," ECF No. 59-5 ¶ 20, and in early 2018 Plaintiff informed Lee-Moku and Waltjen about this recommendation. *Id.* ¶ 24.  On September 7, 2018, Plaintiff had her first visit with Sheareen Gedayloo, M.D. ("Dr. Gedayloo"), who, according to Plaintiff,[2] had strongly advised her to switch to a "less stressful position" in the company because she "was in danger of having a heart attack."  *See* ECF No. 59 ¶ 56; ECF No. 59-5 ¶¶ 21–23.  Her blood pressure that day was 154/101.  *See* ECF No. 59-7 at 3.

On the same day of her September 7 appointment, Plaintiff later spoke to Waltjen over the phone and told him about Dr. Gedayloo's advice that she was in

---

[2]  Aside from her own declaration, Plaintiff cites to "Exhibit E," ECF No. 59-7, which consists of medical records beginning on September 7, 2018.  But Plaintiff does not identify what in the notes for the September 7 visit suggests that Dr. Gedayloo thought Plaintiff was "in danger of having a heart attack" or that she should switch jobs; rather, the visit notes state that Plaintiff's hypertension was "not optimal" but that Plaintiff did not want to take any medications, and that the "[l]ifestyle modifications" suggested by Dr. Gedayloo at Plaintiff's appointment on October 23, 2018, were: "maintain upright posture during and after eating, quit smoking, avoid eating with[in] three hours before bedtime, elevate the head of bed 4–6 inches by placing bricks under the headboard."  ECF No. 59-7 at 3, 7.

danger of having a heart attack. *See* ECF No. 59 ¶ 58; ECF No. 59-5 ¶ 23. She asked him if she could be transferred to a less stressful position, but he informed her that she would need to apply for an open position. *See* ECF No. 59 ¶ 58; ECF No. 59-5 ¶ 23. About twice more and sometime in 2018, Plaintiff requested a transfer to another position as an accommodation but was denied. *See* ECF No. 59-5 ¶¶ 24, 27. Plaintiff's blood pressure had increased to 167/99 by October 23, 2018. *See* ECF No. 59-7 at 6.

### 4. *Plaintiff's Resignation And Attempted Rescission*

On October 19, 2018, Plaintiff emailed Waltjen, stating "[m]y resignation date is targeted for February 28, 2019." ECF No. 59-9. In response, Lee-Moku (at Waltjen's request) asked Plaintiff to submit an advance resignation with that end date. *See* ECF No. 59 ¶¶ 59, 61; ECF No. 59-5 ¶¶ 28, 30. Plaintiff did so by email dated October 25, 2018. *See* ECF No. 59-15 at 2. In November/December 2018, Plaintiff applied to another position with Hawaiian Light, but the position was cancelled after she applied. ECF No. 59 ¶ 62; ECF No. 59-5 ¶ 32. Meanwhile, Lee-Moku retired in December 2018. *See* ECF No. 59-5 ¶¶ 8, 33.

In January 2019, Plaintiff sought to rescind her resignation because by mid-January she was "feeling much better" and her position had not yet been filled. ECF No. 59-5 ¶¶ 33, 34; ECF No. 59 ¶ 63. On January 31, 2019, Plaintiff emailed Waltjen that several "leaders, employees and union" had asked her to rescind her

resignation "in light of recent changes" concerning general personnel matters. *See* ECF No. 59-13; ECF No. 59-2 at 80–81 (Tr. 112:5 to 113:3). Notably, nothing in the January 31 email states *she* wanted to rescind her resignation, despite her Concise Statement of Facts stating otherwise. *See* ECF No. 59-13; ECF No. 59 ¶ 64.

Waltjen and Plaintiff later discussed Plaintiff's email. *See* ECF No. 59-2 at 81 (Tr. 113:6–8). Plaintiff asked Waltjen for "an extension or [to] rescind" her resignation, explaining she had not yet secured another position because she had been caring for her father, leaving her little time to apply for positions. *Id.* (Tr. 113:10–19). Waltjen told her that he would get back to her by February 5, 2019. *See* ECF No. 59 ¶ 64; ECF No. 59-2 at 81–82 (Tr. 113:25 to 114:2). After he (nor anyone else at Hawaiian Light) did not respond by that date, Plaintiff emailed Waltjen on February 6, 2019, stating that she was "officially rescind[ing her] resignation due to recent changes." ECF No. 59-15; ECF No. 59-2 at 82 (Tr. 114:5–18). On February 12, 2019, Waltjen emailed Plaintiff indicating that he could not accept her rescission notification because Hawaiian Light "ha[d] been working on filling [her] position" since October 2018, when she had initially provided notice. ECF No. 59 ¶ 68; ECF No. 59-5 ¶ 41; ECF No. 45-11 at 1; ECF No. 45-3 ¶ 14.

According to Plaintiff, three male employees and one female employee were

7

previously permitted to rescind their resignations even when their positions had been filled. *See* ECF No. 54 ¶¶ 36–37; ECF No. 54-2 at 20–21 (Tr. 94:7 to 95:25). One of those male employees had departed from the company for about a month, but then returned. *See* ECF No. 54-2 at 20–21 (Tr. 94:7 to 95:25).

### 5. *Plaintiff's Replacements*

After commencing a search to fill Plaintiff's position shortly after her initial resignation letter was submitted and well before her attempted rescission, Defendant interviewed a female candidate and made an initial offer to her on November 29, 2018. *See* ECF No. 54 ¶ 4; ECF No. 45-3 ¶ 10. She declined it sometime later in 2018, but negotiations continued. *See* ECF No. 54 ¶ 4; ECF No. 45-3 ¶ 11; ECF No. 45-18; ECF No. 45-10. Defendant interviewed the candidate again on February 22, 2019, and made her another offer on February 28, 2019, the same date that Plaintiff's employment with Hawaiian Light ended. ECF No. 54 ¶ 41; ECF No. 59 ¶ 70; ECF No. 45-18; ECF No. 59-17 at 2; ECF No. 45-3 ¶ 16. The female candidate declined it on March 25. 2019. ECF No. 59 ¶ 71; ECF No. 59-5 ¶ 44; ECF No. 45-12.

In May 2019, Hawaiian Light hired two male candidates as HR Business Partners. ECF No. 59 ¶ 72; ECF No. 59-19.

### B. Procedural History

Plaintiff filed an EEOC charge and received a dismissal and notice of rights

on May 27, 2021.  ECF No. 1 ¶ 9.  In August 2021, Plaintiff filed the instant lawsuit, asserting Count I — disability discrimination under the ADA, and Count II — sex discrimination under Title VII.  *Id.* at 6–8.  As to Count I, Plaintiff alleged that she had a PTSD condition, that her supervisors were well aware of her disability, and that she was discriminated against when she:  (1) requested accommodations because of her PTSD, such as reduced hours, but was denied; (2) was denied a transfer to a less stressful job; and (3) was denied a request to withdraw an advance resignation she had been asked to submit.  ECF No. 1 ¶¶ 5, 12–13.  According to Plaintiff's opposition, she now only pursues a claim based on the third purported action — Defendant's failure to allow her to rescind her resignation.  ECF No. 60 at 4.  As to Count II, Plaintiff alleged that the hiring of two males after she was not permitted to rescind her resignation amounted to sex discrimination.  ECF No. 1 ¶ 6.

Defendant filed its Motion and Concise Statement of Facts on January 25, 2023.  *See* ECF Nos. 44, 45.  Certain Motion exhibits that were initially requested to be filed under seal were ultimately filed publicly.  *See* ECF Nos. 52, 54.  On February 13, 2023, Plaintiff filed her opposition and opposing Concise Statement of Facts.  *See* ECF Nos. 59, 60.  On February 27, 2023, Defendant filed a reply, which did not include any objections to Plaintiff's Concise Statement of Facts.  *See* ECF No. 61.  The Court held a hearing on March 16, 2023.  ECF No. 64.

Following the hearing, Plaintiff filed a Motion to File a First Amended Complaint, ECF No. 66, which is currently set for a hearing before Magistrate Judge Rom Trader on May 11, 2023. ECF No. 67.

## II.   LEGAL STANDARD

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). "A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)); *see T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). In a motion for summary judgment, the court must view the facts in the light most favorable to the nonmoving party. *See State Farm Fire & Cas. Co. v. Martin*, 872 F.2d 319, 320 (9th Cir. 1989) (per curiam).

Once the moving party has met its burden of demonstrating the absence of any genuine issue of material fact, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. *See T.W. Elec.*, 809 F.2d at 630; Fed. R. Civ. P. 56(c). The opposing party may not defeat a motion for summary judgment in the absence of any significant probative evidence tending to

support its legal theory. *See Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir. 1991). The nonmoving party cannot stand on its pleadings, nor can it simply assert that it will be able to discredit the movant's evidence at trial. *See T.W. Elec.*, 809 F.2d at 630; *Blue Ocean Pres. Soc'y v. Watkins*, 754 F. Supp. 1450, 1455 (D. Haw. 1991).

If the nonmoving party fails to assert specific facts, beyond the mere allegations or denials in its response, summary judgment, if appropriate, shall be entered. *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 884 (1990); Fed. R. Civ. P. 56(e). There is no genuine issue of fact if the opposing party fails to offer evidence sufficient to establish the existence of an element essential to that party's case. *See Celotex*, 477 U.S. at 322; *Citadel Holding Corp. v. Roven*, 26 F.3d 960, 964 (9th Cir. 1994); *Blue Ocean*, 754 F. Supp. at 1455.

In considering a motion for summary judgment, "the court's ultimate inquiry is to determine whether the 'specific facts' set forth by the nonmoving party, coupled with undisputed background or contextual facts, are such that a rational or reasonable jury might return a verdict in its favor based on that evidence." *T.W. Elec.*, 809 F.2d at 631 (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 257 (1986)) (footnote omitted). Inferences must be drawn in favor of the nonmoving party. *See id.* However, when the opposing party offers no direct evidence of a material fact, inferences may be drawn only if they are reasonable in light of the

other undisputed background or contextual facts and if they are permissible under the governing substantive law.  *See id.* at 631–32.  If the factual context makes the opposing party's claim implausible, that party must come forward with more persuasive evidence than otherwise necessary to show there is a genuine issue for trial.  *See Bator v. Hawaii*, 39 F.3d 1021, 1026 (9th Cir. 1994) (citing *Cal. Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987)).

### III.  DISCUSSION

**A.  ADA Disability Discrimination**

Under the ADA, an employer may not discriminate "against a qualified individual on the basis of disability."  42 U.S.C. § 12112(a).  Thus, to establish a prima facie case under the ADA, Plaintiff must show that (1) she is disabled under the ADA; (2) she is able to perform her job's essential functions; and (3) she suffered an adverse employment action because of her disability.  *See Snead v. Metro. Prop. & Cas. Ins. Co*, 237 F.3d 1080, 1087 (9th Cir. 2001); *Jefferson v. Time Warner Cable Enter. LLC*, 584 F. App'x 520, 522 (9th Cir. 2014) (citing *id.*).  If Plaintiff establishes a prima facie case, the burden shifting analysis of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), applies.  That is, the burden then shifts to Defendant to rebut the presumption of discrimination by producing evidence showing that Defendant's action was based on a legitimate

nondiscriminatory explanation. *See Snead*, 237 F.3d at 1093. If Defendant does so, Plaintiff then must show that Defendant's proffered reason is mere pretext. *See id.*

Defendant moves for summary judgment primarily on the grounds that Plaintiff fails to establish a prima facie case, as she has not shown that she is disabled, nor — even assuming that she is disabled — that she suffered an adverse employment action because of that disability. ECF No. 53 at 18–27. Specifically, Defendant argues that the only disability alleged in the Complaint is PTSD and that there is no evidence that she suffered from it while employed with Hawaiian Light or that anyone at Hawaiian Light was aware of her condition. *See id.* at 21. Defendant also argues that Hawaiian Light's decision to not allow Plaintiff to rescind her resignation is not an adverse employment action as a matter of law, and even if it could be considered an adverse employment action, it was not made *because of* her PTSD. *See id.* at 27–28.

The Court agrees that Plaintiff has not made a prima facie case because she has not shown that any adverse employment action was due to her PTSD. So it need not address the other elements. Nonetheless, the Court observes that it at least appears that Plaintiff qualified as a disabled person, particularly when taking the evidence in the light most favorable to her. Multiple superiors at Hawaiian Light were aware of Plaintiff's PTSD condition at some point during her

employment, and Dr. Chock recorded Plaintiff's PTSD impairments and apparently regarded her as having PTSD during her period of employment with Defendant. *See Coons v. Sec'y of U.S. Dep't of Treasury*, 383 F.3d 879, 884 (9th Cir. 2004) ("According to the ADA, an individual is disabled if that individual (1) has a physical or mental impairment that substantially limits one or more of the individual's major life activities; (2) has a record of such an impairment; or (3) is regarded as having such an impairment." (citation omitted)).  Additionally, Defendant does not dispute that Plaintiff could perform her job functions. *See, e.g.*, ECF No. 53 at 21.

Even taking the evidence in the light most favorable to Plaintiff, the record does not support that Plaintiff's PTSD was the cause for the alleged adverse employment action.  Plaintiff's Complaint rests on an allegation that she was not allowed to rescind her resignation due to her disability caused by PTSD. *See, e.g.*, ECF No. 1 ¶¶ 4, 5, 12, 13.  But the record shows that Plaintiff submitted her resignation because of her hypertension and risk of a heart attack, and that she sought to withdraw her resignation because her blood pressure improved. *See, e.g.*, ECF No. 59 ¶¶ 57–59, 63.  And nothing in the record ties Plaintiff's hypertension diagnosis to her PTSD.  Notably, Plaintiff's PTSD symptoms do not include hypertension, and even Plaintiff lists hypertension as a separate disorder from PTSD. *See* ECF No. 59 ¶ 42; ECF No. 60 at 5.

To the extent Plaintiff appears to now assert in her opposition that her disability claim is based *also* on her hypertension, *see, e.g.*, ECF No. 60 at 9, she cannot do so. A plaintiff "may not amend her complaint through argument in a brief opposing summary judgment." *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004) (citing *Shanahan v. City of Chicago*, 82 F.3d 776, 781 (7th Cir. 1996)); *see Carvajal v. Pride Indus. Inc.*, NO. 10CV2319-GPC MDD, 2013 WL 1728273, *6 (S.D. Cal. Apr. 22, 2013) (quoting *id.*).

During the hearing, Plaintiff cited her answers to Defendant's Interrogatories as the best evidence of a connection between her PTSD and alleged adverse employment action. In one answer, she reported that Waltjen called her "crazy" and a "problem," sometime in November 2017 — nearly a year before she submitted a resignation and more than a year before the denial of her request to withdraw it. ECF No. 59-24 at 10. And this statement was told to her second-hand by another one of Defendant's employees, and was in response to an email Plaintiff sent "requesting employment law training because of Defendant's repeated discriminatory practices." *Id*. The other event (again described in an answer) occurred sometime between 2015 and 2018, and involved that same employee giving her a plaque and making disparaging remarks, including that the word "syndrome" should be added to the plaque after her name, and that the same employee and Waltjen said she was "crazy" and "bipolar." *Id.* at 14. But Plaintiff

15

fails to explain what the causal link is between those comments and the refusal to allow her to rescind. In other words, without more, the comments from years prior are too attenuated from the alleged adverse employment action to tie them to her PTSD diagnosis. *See, e.g.*, *Snead*, 237 F.3d at 1089–90 (noting that an inference of discrimination could be drawn from the timing of the elimination of the plaintiff's position, the plaintiff's disability history, *and* the plaintiff's communications with her employer regarding returning to her position following her disability-related leave).

Even if the Court were to determine that Plaintiff has sufficiently shown that her PTSD was the reason Defendant refused to allow Plaintiff to rescind her resignation, it cannot conclude, under the facts of this case, that the refusal was an adverse employment action. Generally, "failure to accept a rescission of resignation is not an adverse employment action." *Porter v. Houma Terrebonne Hous. Auth. Bd. of Comm'rs*, 810 F.3d 940, 947 & n.11 (5th Cir. 2015) (collecting non-retaliation discrimination cases from the Third, Fifth, Sixth, and Seventh Circuits). In response, Plaintiff attempts to now assert that Defendant's refusal to allow Plaintiff's rescission amounts to constructive termination. *See* ECF No. 60 at 16. But this is nowhere alleged in her Complaint, *see generally* ECF No. 1, and just as Plaintiff may not amend her Complaint in an opposition to a motion for summary judgment, she "cannot raise a new theory for the first time in opposition

to summary judgment." *Patel v. City of Long Beach*, 564 F. App'x 881, 882 (9th Cir. 2014) (citations omitted); *see also Hwang v. Nat'l Tech. & Eng'g Sols. of Sandia, LLC*, Case No. 20-cv-08551-SK, 2022 WL 3566444, at *8 (N.D. Cal. Aug. 18, 2022) (citing *Patel* and concluding that the plaintiff in a Title VII discrimination action could not rely on constructive termination theory not previously pled).

Here, Plaintiff did not seek to withdraw her resignation until months after she submitted it, and in the meantime, Defendant had started the process of finding her replacement, including interviewing, making an offer to, and negotiating with a candidate. For the same reason, even if the Court were to determine Plaintiff made a prima facie case of an ADA violation, she cannot establish that Defendant's stated reason for the adverse employment decision — that it had progressed significantly in the process of finding her replacement — was pretextual.

For the foregoing reasons, the Court GRANTS the Motion as to Count I.

**B.     Count II — Title VII Sex Discrimination**

At the hearing, Plaintiff all but conceded Count II, acknowledging that the evidence in support of it is weak. And it is weak. The Complaint alleges Defendant discriminated against Plaintiff on the basis of sex when it hired two males to replace her after she was not allowed to withdraw her resignation. *See* ECF No. 1 ¶ 6. This allegation suggests that Defendant's reason for not allowing

Plaintiff, a female, to rescind her resignation was so that Defendant could hire two men in her stead. Significantly, the opposition pivots somewhat and contends that the discrimination against her was because men were allowed to rescind their resignations. *See* ECF No. 60 at 17. In any event, Plaintiff cannot prevail under either theory.

Title VII prohibits employment discrimination against "any individual . . . because of such individual's . . . sex." 42 U.S.C. § 2000e–2(a). To establish a prima facie case under Title VII, Plaintiff must show: (1) she belongs to a protected class; (2) she was qualified for the position; (3) she was subject to an adverse employment action; and (4) similarly situated individuals outside her protected class were treated more favorably. *See Chuang v. Univ. of Calif. Davis, Bd. of Trs.*, 225 F.3d 1115, 1123 (9th Cir. 2000) (citation omitted). If she does, the *McDonnell Douglas* burden shifting analysis applies. *See Campbell v. Haw. Dep't of Educ.*, 892 F.3d 1005, 1012 (9th Cir. 2018).

It is undisputed that Plaintiff satisfies the first two elements — Plaintiff is a member of a protected class and was qualified for the position — but Defendant argues that Plaintiff fails to make a prima facie showing because (1) the failure to permit the rescission of a voluntary resignation cannot be considered an adverse employment action as a matter of law, and (2) Plaintiff has not identified any similarly situated men who were treated differently. *See* ECF No. 53 at 25–27, 29–

18

32.  And even if Plaintiff could establish a prima facie case, Defendant contends it has proffered a legitimate nondiscriminatory reason for not permitting Plaintiff to rescind, and no reasonable jury could conclude that Defendant failed to permit Plaintiff to rescind based on her sex.  *See id.* at 27–28, 32.

As to whether there are similarly situated male employees, Plaintiff states only that Defendant allowed "other men . . . employees to rescind their resignations" and that Defendant does not have a written policy against allowing such rescission.  ECF No. 60 at 17.  Plaintiff appears to argue that a reasonable jury could conclude that Defendant's proffered reason — the recruiting process was already well underway — was mere pretext because the position went unfilled until at least a couple of months after Plaintiff's resignation date.  *See id.* at 16–17.

Plaintiff has not established a prima facie case because she fails to show that similarly situated men were treated more favorably.  To make such a showing, Plaintiff "must identify employees outside her . . . sex who were similarly situated to her 'in all material respects' but who were given preferential treatment; they must 'have similar jobs and display similar conduct.'"  *Campbell*, 892 F.3d at 1015 (citation omitted).  While Plaintiff points to three male employees who were allowed to rescind their resignations, she wholly fails to show that they had "similar jobs" and "display[ed] similar conduct."  *See, e.g.*, *Prouty v. Saul*, Case No. CV 18-8567 PA (JPRx), 2020 WL 4518605, at *6 (C.D. Cal. June 29, 2020)

19

(concluding element not met when plaintiff failed to identify "any other male colleague in a similar job position, with similar responsibilities, who was treated more favorably than her"). Indeed — as Plaintiff's counsel conceded at the hearing — the record is bare of any information regarding the positions and responsibilities these male employees had, and other information related to the circumstances of their resignations and rescissions. *See Campbell*, 892 F.3d at 1016 (noting that "general comparison[s]" are insufficient to satisfy this element). And to the extent Plaintiff's theory is that her rescission was denied to make way for male employees, that fails because Defendant first offered the position to a woman.

The Court therefore GRANTS the Motion as to Count II.

## IV.   CONCLUSION

For the foregoing reasons, Defendant's Motion, ECF No. 44, is GRANTED.

IT IS SO ORDERED.

DATED: Honolulu, Hawaiʻi, March 24, 2023.



Jill A. Otake
United States District Judge

CV 21-00362, *Mokiao v. Hawaiian Electric Light Co.*; ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT